**O.I. CORPORATION, Plaintiff–Appellant,**

v.

**TEKMAR COMPANY INCORPORATED, Defendant–Appellee.**

No. 96–1427.

United States Court of Appeals, Federal Circuit.

May 22, 1997.

As Amended on Limited Grant of Rehearing and Denial of Rehearing In Banc July 17, 1997.

Michael O. Sutton, Fish & Richardson P.C., Houston, TX, argued, for plaintiff-appellant. With him on the brief was Albert B. Deaver, Jr. Also with him on the brief were Robert E. Hillman, of Boston, MA, and Richard J. Anderson, of Minneapolis, MN.

Jesse J. Jenner, Fish & Neave, of New York City, argued, for defendant-appellee. With him on the brief were W. Edward Bailey, William J. McCabe, and Pablo D. Hendler.

Before RICH, MAYER, and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

O.I. Corporation appeals from the summary judgment of the United States District Court for the Southern District of Texas that Tekmar Company Inc. did not infringe U.S. Patents 5,358,557 and 5,470,380. *O.I. Corp. v. Tekmar Co.*, No. 95–CV–113 (S.D. Tex. June 17, 1996). Because the district court did not err in concluding that there were no genuine issues of material fact and that Tekmar was entitled to judgment as a matter of law that it did not infringe the patents, we affirm.

## BACKGROUND

OI owns the '557 and '380 patents, the '380 patent being a division of the '557 patent. The '380 and '557 patents relate to an apparatus and a method, respectively, for removing water vapor from a sample to be analyzed in a gas chromatograph. In the apparatus, as shown below in Figure 7 of the patents, an inert gas stream is first bubbled through a sample contained within a sparge vessel (13). The gas stream purges both contaminant and water vapor as it passes through the sample. The stream of gas, contaminant, and water, referred to as an analyte slug or stream, exits the sparge vessel and flows through a temperature-controlled passage in a water management device (10) to a trap (11). The trap (11) is heated and a gas stream flows through it in the opposite direction, desorbing the concentrated contaminants. The stream then flows back through the temperature-controlled passage at a second, lower temperature to the gas chromatograph (12) for measurement of the contaminants.

FIG.7

Figure 3 of the patents, below, is a side view of the water management device (10) showing an embodiment of the passage (31). The passage (31) is contained within a body (20) having a first section (34) at a right angle to a second section (35). In this embodiment, the passage is internally threaded, which causes a swirling of the analyte slug for assisting in the removal of water vapor.

**FIG.3**

The district court treated claim 17 of the '380 patent and claim 9 of the '557 patent as representative[1] of the asserted claims of the patents; these claims read as follows:

17. An apparatus for removing water vapor from an analyte slug passing between a sparge vessel, trap and analytical instrument, comprising:

(a) first means for passing the analyte slug through a passage heated to a first temperature higher than ambient, as the analyte slug passes from the sparge vessel to the trap; and

(b) second means for passing the analyte slug through the passage that is air cooled to a second temperature below said first temperature but not below ambient, as the analyte slug passes from the trap to the analytical instrument.

9. A method for removing water vapor from an analyte slug passing between a sparge vessel, trap and gas chromatograph, comprising the steps of:

(a) passing the analyte slug through a passage heated to a first temperature higher than ambient, as the analyte slug passes from the sparge vessel to the trap; and

(b) passing the analyte slug through the passage that is air cooled to a second temperature below said first temperature but not below ambient, as the analyte slug passes from the trap to the gas chromatograph.

Tekmar sells similar devices, and OI sued Tekmar, alleging that the Tekmar 3000[2] "purge and trap" devices infringed the apparatus and method claims of the patents. Tekmar moved for summary judgment of

---

1. OI does not necessarily agree that claim 17 is representative, but, in view of our disposition of this appeal, the issue is moot.

2. Tekmar refers to the accused product as the Tekmar Model 3000A device. Although the parties use different product numbers to refer to the accused device, they do not dispute the structure of the passage in that device.

noninfringement, and the district court granted its motion. The court construed both the method and apparatus claims under section 112, ¶ 6, particularly focusing on the meaning of the word "passage." It concluded that the claims were limited to passages of the type disclosed in the written description portion of the specification, and equivalents thereof, which did not include the passages in the Tekmar devices, which contain smooth-walled coiled tubing. The court stated that "the patented 'passage' specifically excludes non-smooth and noncylindrical [sic, smooth and cylindrical] devices from the host of structures it references, whereas the corresponding component of the accused device is structurally smooth and cylindrical," and concluded that the claims did not cover the accused devices. Accordingly, the court entered final judgment of noninfringement. OI now appeals to this court.

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1576–77, 12 USPQ2d 1382, 1383 (Fed.Cir. 1989). Thus, summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the nonmovant. *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1274, 35 USPQ2d 1035, 1038 (Fed.Cir. 1995). We review *de novo* a district court's grant of summary judgment. *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994).

### A. *Apparatus Claim 17*

OI argues that the district court erred in applying section 112, ¶ 6, to the word "passage." In particular, it asserts that the passage recited in paragraph (a) of claim 17 is not part of the means recited in the means-plus-function clause of that claim and therefore that it should not be interpreted under and limited by section 112, ¶ 6. Tekmar responds that the passage recited in the claim is part of the recited means, as it is required for passing the analyte slug, that it is therefore part of a means-plus-function clause, and that the word "passage" as so construed does not include smooth-walled tubing. It refers to the written description, which discloses non-smooth tubing for swirling the analyte slug and which distinguishes over the prior art by stating that prior art tubing is generally smooth-walled.

Determining whether a patent claim has been infringed requires a two-step analysis: "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1576, 27 USPQ2d 1836, 1839 (Fed.Cir.1993). Section 112, ¶ 6, provides that:

*An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.*

35 U.S.C. § 112, ¶ 6 (1994) (emphasis added).

We conclude that the district court erred in applying section 112, ¶ 6, to the word passage in apparatus claim 17, but that this error was harmless. There is no question that this section of the statute does apply to claim 17. It is an apparatus claim with means-plus-function clauses and no structure is recited in support of any means. The first and second means clauses of the claim recite "means for passing" an analyte slug through a passage without reciting definite structure in support of any means, and such clauses are therefore subject to the requirements of 35 U.S.C. § 112, ¶ 6. *See Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 531, 41 USPQ2d 1001, 1006 (Fed.Cir.1996) (stating that to invoke section 112, ¶ 6, a means-plus-function limitation must not recite definite structure for performing the de-

scribed function); *see also Greenberg v. Ethicon Endo–Surgery, Inc.*, 91 F.3d 1580, 1584, 39 USPQ2d 1783, 1787 (Fed.Cir.1996) (stating that use of the phrase "means for" generally invokes section 112, ¶ 6). "Literal infringement of a claim containing a means clause requires that the accused device perform the identical function as that identified in the means clause and do so with structure which is the same as or equivalent to that disclosed in the specification." *Micro Chem., Inc. v. Great Plains Chem. Co.*, 103 F.3d 1538, 1547, 41 USPQ2d 1238, 1245–46 (Fed. Cir.1997).

■ However, the court erroneously concluded that the word "passage" recited in the claim is part of a means-plus-function clause and hence subject to the limitations of section 112, ¶ 6. The recited function in claim 17 consists of passing the analyte slug through a passage, the analyte slug comprising a gas stream with contaminant and water vapor. Structure supporting the means for passing the analyte slug through the water management device containing the passage is not recited in the claim. Although the passage may act upon the slug by channeling it while it is being passed, it is not the means that causes the passing. Rather, it is the place where the function occurs, not the structure that accomplishes it. Thus, although claim 17 is a means-plus-function claim subject to section 112, ¶ 6, it is not so in respect of the word "passage." The specification also fails to indicate structure for accomplishing the passing which would support the means. It does, however, explain that the water management device is located between the sparge vessel and the trap for use in a backflush or, alternatively, a foreflush system, and the passing therefore apparently occurs by means known to those skilled in the art. Since we are not presented with the question whether the missing structure for carrying out the recited means limits the meaning of the claim, we will not dwell further on that question. We will consider only whether the court ultimately interpreted the meaning of the word "passage" correctly in light of our conclusion that it is not a part of the recited "means ... for performing a specified function" for purposes of section 112, ¶ 6, and is therefore itself not subject to

the construction called for by that statutory provision.

■ In construing a claim limitation, we look to the claim language, the written description, the prosecution history and, if necessary, extrinsic evidence. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582–83, 39 USPQ2d 1573, 1576–77 (Fed.Cir.1996). Here, the written description states that the structure for the passage includes non-smooth geometries and a conical shape:

Although a threaded configuration is shown for the second section, other *non-smooth geometries* may be used to remove water vapor and cause that water vapor to be trapped in the second section of the bore. For example, a series of ridges may be included in the interior surface of the second section. Alternatively, the second section of the bore may be conical in configuration. As with the threaded or ridged configuration, the conical shape causes a swirling effect on the water vapor to remove that vapor from the analyte slug.

'557 patent, col. 7, lines 13–22 (emphasis added). The written description also distinguishes over prior art geometries as follows:

A number of different geometries for the second section are contemplated, including those having an irregular shaped surface or noncylindrical shape. *In contrast, the prior art has generally specified that the pneumatic tubing and passageways between the trap and GC are smooth-walled.*

'557 patent, col. 7, lines 45–50 (emphasis added).

All of the "passage" structures contemplated by the written description are thus either non-smooth or conical. In addition, the description expressly distinguishes over prior art passages by stating that those passages are generally smooth-walled. OI has not identified anything in the prosecution history contrary to those statements. Therefore, we conclude that one skilled in the art reading the claims, description, and prosecution history would conclude that the term "passage" in claim 17 does not encompass a smooth-walled, completely cylindrical structure. Because the description adequately explains the meaning of "passage" as used in this patent,

we need not consider extrinsic evidence. *See Vitronics,* 90 F.3d at 1582–83, 39 USPQ2d at 1577. It is undisputed that the accused device contains a smooth-walled, completely cylindrical passage. Thus, even though the district court erred in construing the claim term "passage" to be subject to the interpretation required by section 112, ¶ 6, it did not err in concluding that there is no genuine issue of material fact that the accused device does not meet the terms of claim 17 of the '380 patent and that Tekmar is entitled to a judgment as a matter of law that it does not infringe that claim. The court's error thus was harmless. *See* Fed.R.Civ.P. 61.

■ OI argues nonetheless that construing the word "passage" to exclude smooth-walled geometries violates the doctrine of claim differentiation, noting that dependent claims further limit the meaning of the word "passage" to a structure that produces swirling or spiraling of the analyte slug. OI argues that the independent claim, being broader in scope than the claim that depends from it, should not be limited to structures that swirl the analyte slug. We do not agree. Although the doctrine of claim differentiation may at times be controlling, construction of claims is not based solely upon the language of other claims; the doctrine cannot alter a definition that is otherwise clear from the claim language, description, and prosecution history. *See Hormone Research Found., Inc. v. Genentech, Inc.,* 904 F.2d 1558, 1567 n. 15, 15 USPQ2d 1039, 1047 n. 15 (Fed.Cir. 1990) (stating that the doctrine of claim differentiation "cannot overshadow the express and contrary intentions of the patent draftsman"). We conclude that the description provides a clear meaning for the language of the claim in this case and that it trumps the doctrine of claim differentiation.

### B. *Method Claim 9*

■ We next address method claim 9 of the '557 patent. OI argues that the district court erred in applying section 112, ¶ 6, to the asserted method claims. In particular, it argues that the court erred in relying upon the broad recital of a purpose in a claim preamble as a function that requires application of section 112, ¶ 6, to a series of process steps. It asserts that section 112, ¶ 6, only applies to steps having an individually associated function, and to steps without recited acts in support thereof. Tekmar responds that the "passing" clauses of claim 9 of the '557 patent are step-plus-function clauses subject to the limitations of section 112, ¶ 6, and that, when so construed, the claims are not infringed.

We first address the application of section 112, ¶ 6, generally to method claims. Appellant asserts, as have other parties, that we have not done so previously. Section 112, ¶ 6, provides that:

> An element in a claim for a combination may be expressed as a means or *step for performing a specified function without the recital of* structure, material, or *acts in support thereof,* and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6 (1994) (emphasis added). This statutory provision clearly applies to claims for a combination. It is well-established of course that, in combinations that are apparatus claims, means for performing a specified function are subject to this paragraph when they lack recital of definite structure or material. Logically, structure and material make up the various means of apparatus. However, "[t]he word 'combination' in this paragraph includes 'not only a combination of mechanical elements, but also a combination of substances in a composition claim, *or steps in a process claim.'*" *In re Fuetterer,* 50 C.C.P.A. 1453, 319 F.2d 259, 264, 138 USPQ 217, 222 (1963) (quoting P.J. Federico, Commentary on the New Patent Act, 35 U.S.C.A. Vol. 1, p. 25 (1954), *reprinted in,* 75 J. Pat. & Trademark Off. Soc'y 161, 186 (Mar.1993)) (emphasis added).

■ The statute of course uses terms that might be viewed as having a similar meaning, namely, steps and acts. It refers to means and steps, which must be supported by structure, material, or acts. It does not state which goes with which. The word "means" clearly refers to the generic description of an apparatus element, and the implementation of such a concept is obviously by structure or material. We interpret the

term "steps" to refer to the generic description of elements of a process, and the term "acts" to refer to the implementation of such steps. This interpretation is consistent with the established correlation between means and structure. In this paragraph, structure and material go with means, acts go with steps. Of course, as we have indicated, section 112, ¶ 6, is implicated only when means *plus function* without definite structure are present, and that is similarly true with respect to steps, that the paragraph is implicated only when steps *plus function* without acts are present. The statute thus in effect provides that an element in a combination method or process claim may be recited as a step for performing a specified function without the recital of acts in support of the function. Being drafted with the permissive "may," the statute does not require that steps in a method claim be drafted in step-plus-function form but rather allows for that form.

Here, the language in question is "the step[s] of ... passing the analyte slug through a passage." The district court considered the statement which appears in the preamble, "removing water vapor from an analyte slug," as a function which invokes application of section 112, ¶ 6. We do not agree. The preamble statement of the purpose of the overall process does not constitute an associated function for the two "passing" steps of claim 9. Performing a series of steps inherently produces a result, in this case the removal of water vapor from the analyte slug, but a statement in a preamble of a result that necessarily follows from performing a series of steps does not convert each of those steps into step-plus-function clauses. The steps of "passing" are not individually associated in the claim with functions performed by the steps of passing.

Section 112, ¶ 6, as is well-documented, was intended to permit use of means expressions without recitation of all the possible means that might be used in a claimed apparatus. *See* Federico, *supra*, at 25 (stating that the statute authorizes greater liberality in the use of functional expressions in combination claims than had been permitted by some court decisions such as *Halliburton*

*Oil Well Cementing Co. v. Walker*, 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3 (1946)). The price that must be paid for use of that convenience is limitation of the claim to the means specified in the written description and equivalents thereof. Similarly, a step for accomplishing a particular function in a process claim may also be claimed without specificity subject to the same price. But claiming a step by itself, or even a series of steps, does not implicate section 112, ¶ 6. Merely claiming a step without recital of a function is not analogous to a means plus a function. We note that the *Halliburton* case concerned an apparatus claim, not a process claim, and we must be careful not to extend the language of this provision to situations not contemplated by Congress. If we were to construe every process claim containing steps described by an "ing" verb, such as passing, heating, reacting, transferring, etc. into a step-plus-function limitation, we would be limiting process claims in a manner never intended by Congress. Accordingly, we conclude that the "passing" limitations of claim 9 are not step-plus-function limitations subject to the requirements of section 112, ¶ 6.

Tekmar argues that, because the method claims "parallel" the apparatus claims, they must be construed consistently with the apparatus claims. Assuming that the limitations of the apparatus claim are subject to the limitations of section 112, ¶ 6, Tekmar thus reasons that the steps of the method claim must likewise be subject to those limitations. Moreover, it argues that OI made no distinction between the method and apparatus claims during the prosecution of the patents and that, accordingly, they must be construed consistently with each other. We understand that the steps in the method claim are essentially in the same language as the limitations in the apparatus claim, albeit without the "means for" qualification. However, even if we were to hold that the word "passage" in the apparatus claims meets the section 112, ¶ 6, tests, we would not agree with Tekmar that the "parallelism" of the claims means that the method claims should be subject to the requirements of section 112, ¶ 6. Each claim must be independently reviewed in order to determine if it is subject to the requirements of section 112, ¶ 6. Inter-

pretation of claims would be confusing indeed if claims that are not means- or step-plus-function claims were to be interpreted as if they were, only because they use language similar to that used in other claims that are subject to this provision. As discussed above, the method claim is not drafted in step-plus-function form and is thus not subject to this provision.

We will therefore construe the meaning of the word "passage" in claim 9, freed from the strictures of section 112, ¶ 6. OI argues that the word "passage" should be given its ordinary and accustomed meaning and that the district court erred in limiting the passage to its preferred embodiment. We do not agree. The textual language describing the passages in the '380 written description are also present in the '557 patent. Therefore, for the reasons explained above, we conclude that the word "passage" in claim 9 does not encompass a completely cylindrical, smooth-walled structure. There is no dispute that the accused device contains such a structure. Tekmar is therefore entitled to a judgment as a matter of law that it does not infringe claim 9. Although the district court erred in concluding that the method claims are subject to the requirements of section 112, ¶ 6, it did not err in concluding that the accused device did not contain a passage as required by those claims. The district court's error thus was harmless. See Fed.R.Civ.P. 61. The assertion that infringement exists under the doctrine of equivalents is not persuasive in view of the fact that the difference between what is expressly claimed, as interpreted by this court, and what Tekmar uses, is one that OI indicated in its specification was a basis for distinguishing over the prior art, thereby estopping OI from extending the effective scope of its claims.

## CONCLUSION

The word "passage" in the asserted claims, properly construed, does not encompass a completely cylindrical, smooth-walled structure. There is no genuine issue of material fact concerning whether the accused device contains such a passage, and Tekmar thus is entitled to judgment as a matter of law that it does not infringe the asserted claims. Accordingly, the district court's judgment is affirmed.

*AFFIRMED.*