**B. BRAUN MEDICAL, INC.,**
Plaintiff–Appellant,

v.

**ABBOTT LABORATORIES and NP**
Medical, Inc., Defendants/Cross–
Appellants.

Nos. 96–1508, 96–1525.

United States Court of Appeals,
Federal Circuit.

Sept. 8, 1997.

**1420**

William G. Todd, Hopgood, Calimafde, Kalil & Judlowe, L.L.P., New York City, argued, for plaintiff-appellant. With him on the brief were Porter F. Fleming and Richard E. Parke. Of counsel was Albert G. Bixler, Connolly Epstein Chicco Foxman Engelmyer & Ewing, Philadelphia, PA.

Lee Carl Bromberg, Bromberg & Sunstein LLP, Boston, MA, argued, for defendants/cross-appellants. With him on the brief were Robert L. Kann, Timothy M. Murphy and Kerry L. Timbers. Of counsel was Judith R.S. Stern.

Before MICHEL, PLAGER and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

I

B. Braun Medical, Inc. (Braun) appeals from the district court's judgment, following a jury trial, that Braun misused its patent, was equitably estopped from asserting its patent, and that, in any event, the accused devices did not infringe the asserted claims of Braun's patent. Abbott Laboratories (Abbott) cross-appeals, seeking attorney fees and damages for Braun's patent misuse. We conclude that the district court erred with respect to its treatment of equitable estoppel and patent misuse. Accordingly, we affirm-in-part, reverse-in-part, vacate-in-part, and remand for further proceedings.

The patent in suit, U.S. Patent No. 4,683,-916 (the '916 patent), is generally directed to a reflux valve that attaches to an intravenous (IV) line and permits injection or aspiration of fluids by means of a needleless syringe. This type of valve provides safety benefits to health care professionals by reducing the risk of needlestick injuries, which might transmit blood-borne pathogens. Since 1987, Braun has sold an embodiment of the patented reflux valve under the commercial name SafSite®. The '916 patent contains drawings, reproduced below, that correspond to the SafSite® valve:

FIG. 2.

FIG. 3.

As these drawings show, the valve is formed of a resilient disc 50 sandwiched between two body elements 11 and 25 that fit together. Body element 25 includes a triangular member 40, which supports the center of the resilient disc 50. Body element 11 includes member 60, which, when engaged by a syringe, presses down on the resilient disc 50 to open the normally closed valve.

Beginning in early 1991, Braun and Abbott representatives discussed the purchase by Abbott of the patented SafSite® valves. Braun informed Abbott that although it was willing to sell SafSite® valves to Abbott for use on Abbott's primary line and piggyback sets, it would not sell those valves for use on an extension set.[1] In a letter dated October 23, 1991, Randy Prozeller, Abbott's General Manager of Fluid Systems, agreed that his company would abide by these restrictions: "We will honor your company's demand that we not use the valve in question for list numbers other than our primary and primary piggyback sets." Pursuant to this arrangement, Abbott purchased approximately 536,000 SafSite® valves.

Meanwhile, negotiations continued between Abbott and Braun for purchase of the SafSite® valves for use with Abbott's extension sets. Because the parties could not reach agreement on these terms, Abbott requested that NP Medical, Inc. (NP Medical) develop a substitute valve. After extensive development, NP Medical developed the accused product: the NP Medical Luer Activated Valve (LAV). The novel aspects of this new valve were claimed in U.S. Patent No. 5,190,067 to Paradis and Kotsifas.

On July 20, 1993, Braun sued Abbott and NP Medical, alleging that the NP Medical LAV infringed claims 1 and 2 of the '916 patent. The primary claim at issue in the present case recites (numbering added):[2]

1. A valve device comprising:

[1] a first body element having an input opening therethrough;

[2] a second body element which complements said first body element and having an outlet opening therefrom;

[3] a resilient valve disc mountable between said first and second body elements;

[4] first means with one body element for supporting the disc at the center thereof;

[5] means with the other body element for holding said disc firmly against said first means in such a manner that said disc is restrained from sideways movement; and

[6] means adjacent said valve disc for engagement by a syringe to open said normally closed disc to permit injection and aspiration of fluids through the device.

The defendants denied infringement, challenged validity and asserted the equitable defenses of patent misuse, estoppel and implied license. Over Braun's objections, the district court submitted all issues, including interpretation of the claims in suit, to the jury. In November 1994, the jury determined that the '916 patent was not invalid and not infringed by the accused NP Medical LAV. The jury found no infringement because it construed the fifth element of the claims as requiring a traverse cross bar, or its equivalent, which it found lacking in the accused products. The jury also determined that Braun was estopped from charging the defendants with infringement, and that Braun had misused the '916 patent. Finally, the jury rejected the defendants' implied license defense.

On the basis of the patent misuse finding, Abbott sought damages pursuant to its declaratory judgment counterclaim. Following an additional eight-day trial on this issue, the jury decided that Braun's alleged patent misuse had not caused any damages to Abbott. After the district court entered judgment on all issues, Abbott filed a motion for attorney fees, contending that the case was exceptional. The district court denied this motion and explained that Braun had presented "suffi-

---

1. The primary line and piggyback sets allow a needleless syringe to be attached directly to an IV. An extension set incorporating the SafSite® valve consists of a tube with a SafSite® valve on one end, and one or more connectors on the other end. These extension sets permit the delivery of additional fluids and drugs.

2. Dependent claim 2 relates to, and limits, the subject matter of independent claim 1. Because the claim construction issue is identical for both claims, we will limit our discussion to claim 1 (as do the parties).

cient evidence and legal support to more than negate the possibility of bad faith or gross negligence on its part in bringing the infringement claim." Both parties appeal those portions of the district court's judgment that are adverse to them.

## II

Before reaching the merits, we first address Braun's contentions that the district court erred by submitting all issues to the jury. Braun preserved this issue by objecting both during trial and in its post verdict motion for judgment as a matter of law. Upon submitting all issues to the jury over Braun's objections, the court indicated that if it were later determined that those issues were "for the court only, I will advise [sic, accept] the jury verdict as advisory."

As to claim interpretation, we note that this case was submitted to the jury in 1994, before this court's opinion in *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir.1995) (in banc), *aff'd*, —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996), which held that claim interpretation is a question of law. Because we agree with the jury's interpretation in this case, any error that the district court may have committed is harmless.

As to the issues of equitable estoppel and patent misuse, the district court submitted the issues to the jury based not on its authority to seek an advisory verdict under Fed. R.Civ.P. 39(c), but rather based on the authority provided by Fed.R.Civ.P. 39(b), which states:

(b) **By the Court.** Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

To our knowledge, only a few courts have considered whether equitable issues may be tried to a jury over objection, pursuant to the authority provided in Rule 39(b). These courts have concluded that the discretionary authority provided by the rule does not authorize jury trial of equitable issues. *See,*

*e.g., New Hampshire Fire Ins. Co. v. Perkins,* 28 F.R.D. 588, 592 (D.Del.1961); *Coates v. Union Oil Co.,* 176 F.Supp. 713, 715 (D.Colo.1959); *see also* 9 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 2334 (2d ed.1983). On the other hand, with regard to at least certain equitable issues, our sister circuits are divided on whether such equitable issues may be tried to a jury based on authority separate from that of Rule 39(b). *Compare Newhouse v. McCormick & Co.,* 110 F.3d 635, 641–43 (8th Cir. 1997) (following rule of Second, Fourth, Seventh and Tenth Circuits barring jury trial of the equitable issue of front pay) *with Cassino v. Reichhold Chem., Inc.,* 817 F.2d 1338, 1347 (9th Cir.1987) (following rule in Third, Fifth, Sixth and Ninth Circuits allowing jury to determine amount of front pay).

The intricacies of Rule 39, and the question of whether a court may ever submit an equitable issue to the jury over objection, are not the focus of the briefing or argument in this case. We need not decide whether the submission of the equitable issues to the jury itself is reversible error, because, for the reasons set forth below, our rulings on both issues relieve Braun of any harmful consequences occasioned by the submission of those issues to the jury.

## III

■ The first issue on appeal concerns the jury's verdict that the accused products do not infringe the '916 patent. The jury determined that "[c]laim one claims only the traverse bar and equivalents thereof." Because the NP Medical LAV lacked a traverse bar or an equivalent thereof, the jury returned a verdict of no infringement either literally or under the doctrine of equivalents. On appeal, the focal point of Braun's argument is that the jury misinterpreted claim 1, and therefore that its verdict of no infringement must be overturned.

■ Infringement (whether literal or under the doctrine of equivalents) is a question of fact, which we review for substantial evidence in the context of a jury trial. *Young Dental Mfg. Co. v. Q3 Special Prods.,* 112 F.3d 1137, 1141, 42 USPQ2d 1589, 1592

(Fed.Cir.1997). The jury's finding of no infringement stems from its interpretation of the fifth limitation in claim 1, the only limitation in dispute. The proper interpretation of that claim is a question of law, which we review *de novo*. *See Markman,* 52 F.3d at 979, 34 USPQ2d at 1329.

The fifth limitation recites "means with the other body element for holding said disc firmly against said first means in such a manner that said disc is restrained from sideways movement." Because this limitation is expressed in "means plus function" language and because it does not recite definite structure in support of its function, it is subject to the requirements of 35 U.S.C. § 112, ¶ 6 (1994). *See Cole v. Kimberly–Clark Corp.,* 102 F.3d 524, 531, 41 USPQ2d 1001, 1006 (Fed.Cir.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 56, —— L.Ed.2d —— (1997); *see also Greenberg v. Ethicon Endo–Surgery, Inc.,* 91 F.3d 1580, 1584, 39 USPQ2d 1783, 1787 (Fed.Cir.1996). That provision mandates that such a claim limitation "be construed to cover the corresponding structure ... described in the specification and equivalents thereof." § 112, ¶ 6. Accordingly, we must turn to the written description of the patent to find the structure that corresponds to the means recited in the fifth limitation. More specifically, we must search for the structure that holds the flexible disc 50 firmly against the triangular member 40 in a manner that restrains sideways movement.

In examining the written description, we immediately find clear and unambiguous reference to such structure. Fig. 2 clearly shows a traverse cross bar 15 that holds the disc against the triangular member 40. This reference is explicitly confirmed by text in the written description, which recites:

Upon assembly, the lower surface of the traverse bar 15 of the upper (as shown) first body element firmly presses against the mid-portion of the flexible disc and presses same against the upper tip of triangular point 40. Preferably, the pressure is such that the triangular tip will form a small indentation 140 (FIG.3) within the disc. This indentation 140 then will positively restrain the disc from sideways movement.

Similarly, the summary of the invention explains that:

A pointed triangle with one body element supports the central area of the disc, which in turn is under pressure from a traverse bar mounted in the other body element. The pressure between the triangle point and the bar generally is sufficient so the flexible disc will be restrained against sideways movement.

Therefore, the written description explicitly states that the traverse cross bar 15 is structure that is designed to hold the flexible disc firmly against the triangular member 40 so as to restrain sideways movement.

In the face of this clear disclosure, Braun argues that although the written description indeed discloses the traverse cross bar as structure that holds the flexible disc against the triangular member, thereby restraining sideways movement, it also discloses an alternative structure for performing that function. Specifically, Braun contends that Fig. 3 of the specification shows a valve seat, and this valve seat functions to hold the flexible disc firmly against the triangular member.[3] We reject this argument.

■ Section 112, paragraph 6 states that a means-plus-function claim "shall be construed to cover the *corresponding* structure ... described in the specification." (emphasis added). We hold that, pursuant to this provision, structure disclosed in the specification is "corresponding" structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim. This duty to link or associate structure to function is the *quid pro quo* for the convenience of employing § 112, ¶ 6. *See O.I. Corp. v. Tekmar Co.,* 115 F.3d 1576, 1583, 42 USPQ2d 1777, 1782 (Fed.Cir. 1997). Our holding in this regard is also supported by our precedent stating that claims drafted in means-plus-function format are subject to the definiteness requirement of the patent law:

---

3. The valve seat is the portion of the body element against which the upper face of the flexible disc 51 rests when the valve is in its closed position.

[I]f one employs means-plus-function language in a claim, one must set forth in the specification an adequate disclosure showing what is meant by that language. If an applicant fails to set forth an adequate disclosure, the applicant has in effect failed to particularly point out and distinctly claim the invention as required by the second paragraph of section 112.

*In re Donaldson Co.,* 16 F.3d 1189, 1195, 29 USPQ2d 1845, 1850 (Fed.Cir.1994) (in banc); *see also In re Dossel,* 115 F.3d 942, 946–47, 42 USPQ2d 1881, 1884–85 (Fed.Cir.1997); 35 U.S.C. § 112, ¶ 2.

Although Fig. 3 of the patent shows a valve seat, neither the specification nor the prosecution history contains *any* indication that the valve seat structure corresponds to the recited function, *i.e.,* that it holds the flexible disc against the triangular member so as to restrain sideways movement. This lack of association between the valve seat and the recited function is especially striking given the explicitly clear association provided between the traverse cross bar and the recited function. Because Braun's specification does not adequately disclose the valve seat as structure that holds the disc firmly in place, Braun has failed to particularly point out and distinctly claim that particular means. *Cf. Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1581, 37 USPQ2d 1365, 1372 (Fed.Cir.1996) (rejecting the patentee's broad interpretation of the claim because the patentee particularly pointed out and distinctly claimed only the narrower interpretation); *Fonar Corp. v. General Elec. Co.,* 107 F.3d 1543, 1551–52, 41 USPQ2d 1801, 1807 (Fed.Cir.1997) (explaining that although the specification states that other wave forms may be used, it fails to specifically identify those wave forms and thus the § 112, ¶ 6 claim is limited to the generic gradient wave form actually disclosed). In sum, Braun's specification does not describe the valve seat as a structure that holds the disc firmly in place in such manner that it is restrained from sideways movement. Therefore, we agree with the jury's determination that the means recited in the fifth limitation refers only to the traverse cross bar.

■ Based on this claim interpretation, there exists substantial evidence to support the jury's verdicts of no infringement. The accused device lacks a traverse bar, and the jury could have determined that the valve seat was not equivalent to the traverse bar—either literally under § 112, ¶ 6 or under the doctrine of equivalents—based on testimony that it did not perform the claimed function and that it was not interchangeable with the traverse bar. *See Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 934, 4 USPQ2d 1737, 1739 (Fed.Cir.1987) (in banc) (explaining that an accused device must have an identity of claimed function to qualify as a § 112, ¶ 6 equivalent). Accordingly, we affirm the district court's judgment on this issue.

## IV

■ The second issue on appeal concerns the judgment that Braun was equitably estopped from suing Abbott and NP Medical for infringement. Braun contends that because this judgment is not supported by evidence, the district court erred by not granting its renewed motion for judgment as a matter of law on this issue. We agree.

■ Equitable estoppel, which bars a patentee from receiving relief, consists of three elements: (i) the patentee must communicate to the accused infringer (by words, conduct or silence) that the patentee will not pursue an infringement claim; (ii) the accused infringer must rely on that communication; and (iii) the accused infringer must establish that it would be materially prejudiced if the patentee is now permitted to proceed with the infringement claim. *See A.C. Aukerman Co. v. R.L. Chaides Const. Co.,* 960 F.2d 1020, 1041–1043, 22 USPQ2d 1321, 1335–37 (Fed.Cir.1992) (in banc).

In the present case, there exists no evidence that Braun communicated anything to Abbott or NP Medical that would lead them to believe that Braun would not sue them for infringement if they made, used, or sold competing valves that infringed Braun's patent. Braun had no commercial dealings with NP Medical concerning needleless valves. Although Braun did have relations with Abbott, those relations concerned Braun's SafSite® valve and not the NP Medical LAV. Accordingly, the judgment of equitable estoppel is not supported by evidence.

V

■ The jury also found Braun guilty of patent misuse based on the following instruction from the district court (emphasis added):

[A] patent holder is not allowed to place restrictions on customers which prohibit resale of the patented product, or allow the customer to resell the patented product only in connection with certain products.... If you find, by a preponderance of the evidence, that Braun placed such restrictions on its customers, including Abbott, you *must* find that Braun is guilty of patent misuse.

Braun contends that this jury instruction is legally erroneous because it essentially creates *per se* liability for any conditions that Braun placed on its sales. We agree.

■ The resolution of this issue is governed by our precedent in *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 24 USPQ2d 1173 (Fed.Cir.1992). In that case, we canvassed precedent concerning the legality of restrictions placed upon the post-sale use of patented goods. As a general matter, we explained that an unconditional sale of a patented device exhausts the patentee's right to control the purchaser's use of the device thereafter. 976 F.2d at 706, 24 USPQ2d at 1178. The theory behind this rule is that in such a transaction, the patentee has bargained for, and received, an amount equal to the full value of the goods. *See Adams v. Burke*, 84 U.S. (17 Wall.) 453, 456–57, 21 L.Ed. 700 (1873); *Keeler v. Standard Folding Bed Co.*, 157 U.S. 659, 663, 15 S.Ct. 738, 739–40, 39 L.Ed. 848 (1895). This exhaustion doctrine, however, does not apply to an expressly conditional sale or license. In such a transaction, it is more reasonable to infer that the parties negotiated a price that reflects only the value of the "use" rights conferred by the patentee. As a result, express conditions accompanying the sale or license of a patented product are generally upheld. *See Mallinckrodt*, 976 F.2d at 708, 24 USPQ2d at 1177, 1179; *cf. General Talking Pictures Corp. v. Western Elec. Co.*, 305 U.S. 124, 127, 59 S.Ct. 116, 117, 83 L.Ed. 81 (1938) ("That a restrictive license is legal seems clear."). Such express conditions, however, are contractual in nature and are subject to antitrust, patent, contract, and any other applicable law, as well as equitable consider-ations such as patent misuse. *Mallinckrodt*, 976 F.2d at 703, 24 USPQ2d at 1176. Accordingly, conditions that violate some law or equitable consideration are unenforceable. On the other hand, violation of valid conditions entitles the patentee to a remedy for either patent infringement or breach of contract. *See Mallinckrodt*, 976 F.2d at 707 n. 6, 24 USPQ2d at 1178–79 n. 6. This, then, is the general framework.

In *Mallinckrodt*, we also outlined the framework for evaluating whether an express condition on the post-sale use of a patented product constitutes patent misuse. The patent misuse doctrine, born from the equitable doctrine of unclean hands, is a method of limiting abuse of patent rights separate from the antitrust laws. The key inquiry under this fact-intensive doctrine is whether, by imposing the condition, the patentee has "impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001–02, 228 USPQ 562, 566 (Fed.Cir.1986); *see also Mallinckrodt*, 976 F.2d at 704, 24 USPQ2d at 1176. Two common examples of such impermissible broadening are using a patent which enjoys market power in the relevant market, see 35 U.S.C. § 271(d)(5) (1994), to restrain competition in an unpatented product or employing the patent beyond its 17-year term. In contrast, field of use restrictions (such as those at issue in the present case) are generally upheld, *see General Talking Pictures*, 305 U.S. at 127, 59 S.Ct. at 117, and any anticompetitive effects they may cause are reviewed in accordance with the rule of reason. *See Mallinckrodt*, 976 F.2d at 708, 24 USPQ2d at 1179–80.

■ Because the district court improperly instructed the jury that it must find Braun guilty of patent misuse if Braun placed *any* use restrictions on its sales of the SafSite® valves, rather than instructing the jury pursuant to the *Mallinckrodt* framework, we remand the case for further proceedings. On remand, the district court must first determine whether Braun's restriction exceeds the scope of the patent grant. If it does not, then Braun cannot be guilty of patent mis-

use. If it does, the restriction must be evaluated under the rule of reason.[4]

## VI

After the jury returned a verdict of patent misuse, the district court held a separate eight-day jury trial to determine whether Braun's patent misuse had caused any damages to Abbott. The district court specifically based this trial on the Declaratory Judgment Act, which gives the trial court discretion to grant "further necessary or proper relief based on a declaratory judgment ... after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." *See B. Braun Med., Inc. v. Abbott Labs.*, 892 F.Supp. 115, 116–17, 36 USPQ2d 1846, 1850 (E.D.Pa.1995); 28 U.S.C. § 2202 (1994). At the conclusion of this separate trial, the jury found that Abbott had failed to prove that Braun's actions caused it any damages. Subsequently, the district court denied Abbott's motion for a new trial on that issue.

Abbott appeals the district court's decision, arguing that the district court abused its discretion by failing to provide this new trial. Braun responds that Abbott is not entitled to damages, as a matter of law, because patent misuse is simply an affirmative defense that results in the patent being unenforceable; it does not entitle the accused infringer to compensatory damages.

 As we have mentioned, the patent misuse doctrine is an extension of the equitable doctrine of unclean hands, whereby a court of equity will not lend its support to enforcement of a patent that has been misused. *See Senza–Gel Corp. v. Seiffhart*, 803 F.2d 661, 668, 231 USPQ 363, 368 (Fed.Cir. 1986). Patent misuse arose, as an equitable defense available to the accused infringer, from the desire "to restrain practices that did not in themselves violate any law, but that drew anticompetitive strength from the patent right, and thus were deemed to be contrary to public policy." *Mallinckrodt*, 976 F.2d at 704, 24 USPQ2d at 1176. When used successfully, this defense results in rendering the patent unenforceable until the misuse is purged. It does not, however, result in an award of damages to the accused infringer.

 The district court held the damages trial based not on the defense of patent misuse, but based instead on Abbott's counterclaim for declaratory judgment. In its counterclaim, Abbott stated that "[t]his is a claim for a declaratory judgment of patent invalidity, unenforceability and non-infringement." After repeating all of the allegations contained in its affirmative defenses, Abbott prayed for the following relief:

1. a dismissal of the complaint,

2. a declaration that Abbott and NP Medical have not infringed Braun's patent,

3. a declaration that the '916 patent is invalid and unenforceable,

4. costs and attorney fees,

5. a declaration that Abbott and NP Medical have an implied license to use the '916 patent,

---

4. In its appeal briefs, Abbott contends that Braun's restrictions constitute a horizontal restraint that violates the antitrust laws *per se*. We briefly address this issue in the event that it is reached on remand. Simply put, the restriction imposed by Braun is not a *per se* illegal horizontal restraint because Braun and Abbott are not horizontal competitors in the relevant markets. The two markets at issue are those for (i) a SafSite® valve, alone, and (ii) an extension set incorporating a SafSite® valve. By virtue of its patent rights to the SafSite® valve, Braun has the right to exclude competition altogether in each of these markets. Therefore, the restricted sale does not constitute a *per se* illegal horizontal restraint. If anything, Braun's sale to Abbott— for further sale to Abbott's customers—is akin to a vertical restraint, which *Mallinckrodt* specifically stated should be analyzed under the rule of

reason. *See Mallinckrodt*, 976 F.2d at 706, 708, 24 USPQ2d at 1178–79.

Abbott relies upon an earlier district court decision in *Baldwin–Lima–Hamilton Corp. v. Tatnall Measuring Systems Co.*, 169 F.Supp. 1, 120 USPQ 34 (E.D.Pa.1958), for the proposition that Braun's actions constitute a *per se* antitrust violation. That case does not control here. The result in *Baldwin* was driven by the court's belief that any condition placed on a sale constituted patent misuse. 169 F.Supp. at 29–30, 120 USPQ at 55–56. As we have explained, however, that reasoning was rejected in *Mallinckrodt*. *See Mallinckrodt*, 976 F.2d at 708, 24 USPQ2d at 1179. In addition, the court in *Baldwin* viewed the conduct of the patentee in that case as being akin to a tie-in, which is not alleged in the present case. 169 F.Supp. at 30–31, 120 USPQ at 56–57.

6. a declaration that Braun is estopped from asserting its patent against Abbott and NP Medical,

7. a declaration that Braun is not entitled to damages for alleged infringement that occurred before the date of Braun's complaint, and

8. "such other and further relief as [the court] deems just and proper."

Relying on 28 U.S.C. § 2202, the district court held that "the Declaratory Judgment Act allows monetary damages to be awarded under a declaratory judgment counterclaim based on patent misuse." *Braun*, 892 F.Supp. at 116 n. 1, 36 USPQ2d at 1850 n. 1.

■■ The Declaratory Judgment Act neither expands a court's jurisdiction nor creates new substantive rights. 12 James Wm. Moore et al., *Moore's Federal Practice* § 57.02[1] (3d ed.1997). Instead, the Act is a procedural device that provides a new, noncoercive remedy (a declaratory judgment) in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy (such as an injunction or damages award) and in cases in which a party who could sue for coercive relief has not yet done so. *See* 10A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* §§ 2766, 2751 (2d ed.1983). Given that the Act merely provides a new noncoercive remedy, it should come as no surprise that the practice in declaratory judgment actions is, "on almost every point, the same as in any civil action." *Id.* § 2768.

In order that the court not be unduly limited, the Act also states that once a court properly has jurisdiction to enter a declaratory judgment, it may also grant "[f]urther necessary or proper relief based on a declaratory judgment ... after reasonable notice and hearing." *See* 28 U.S.C. § 2202. This provision allows a court to award coercive relief, in the form of damages or an injunction, as needed based on the circumstances of

the case; it was not designed, however, to allow a declaratory judgment plaintiff to avoid the requirements imposed by the substantive law as a predicate to obtaining such relief. Accordingly, § 2202 requires a hearing at which the declaratory judgment plaintiff must state its substantive claim for further relief.

■■ In the present case, if the district court enters a declaratory judgment that the patent is unenforceable due to misuse, it *could* then exercise its discretion to hold a hearing to allow Abbott to state a substantive claim upon which it is entitled to recover damages. In this regard, contrary to the district court's opinion, monetary damages may not be awarded "under a declaratory judgment counterclaim based on patent misuse," because patent misuse simply renders the patent unenforceable. In other words, the defense of patent misuse may not be converted to an affirmative claim for damages simply by restyling it as a declaratory judgment counterclaim.[5]

Although the district court has the power to entertain a hearing for damages as outlined above, we disagree with Abbott's argument that it is entitled to a new trial on the facts of the present case. As the district court explained, Abbott bore the burden of proving the amount of harm it had suffered, if any, as a result of Braun's actions. Based on the inconsistencies in the testimony of Abbott's witnesses, and based on the lack of contemporaneous documentation concerning damage to Abbott, the jury likely determined that Abbott had failed to meet its burden of proof. Therefore, the district court did not abuse its discretion in denying Abbott's motion for a new trial on damages.[6]

## VII

■■ Finally, we address Abbott's cross-appeal concerning attorney fees. Contrary

---

5. This is not to say that a party in Abbott's position is without recourse. Our precedent has explained that the same *actions* by a patentee that result in patent misuse may also serve as an element of an affirmative claim for damages. *See Senza–Gel*, 803 F.2d at 668, 231 USPQ at 368; *see also Transitron Elec. Corp. v. Hughes Aircraft Co.*, 487 F.Supp. 885, 893, 205 USPQ

799, 806 (D.Mass.1980). Therefore, a party in Abbott's position might be entitled to damages under an antitrust or breach of contract theory.

6. Because of our decision on this issue, on remand, even if Abbott chooses to pursue its patent misuse defense under the *Mallinckrodt* framework, it may not relitigate the damages issue.

to Abbott's contention, we conclude that the district court did not abuse its discretion in denying attorney fees to Abbott.

■ Title 35, section 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 (1994). This statutory provision requires the moving party to demonstrate, by clear and convincing evidence, that the case is exceptional; even then, the district court retains discretion as to whether or not to award attorney fees. *See Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.,* 15 F.3d 1573, 1584, 27 USPQ2d 1836, 1845 (Fed.Cir.1993); *Hycor Corp. v. Schlueter Co.,* 740 F.2d 1529, 1540, 222 USPQ 553, 562 (Fed.Cir.1984).

After witnessing ten days of trial, the district court refused to award attorney fees because "Braun presented sufficient evidence and legal support to more than negate the possibility of bad faith or gross negligence on its part in bringing the infringement claim." This statement was based on the fact that the accused product met most of the limitations required by claim 1 of the '916 patent, and Braun presented a plausible though untenable argument as to why the remaining limitation (means for holding the disc firmly against the triangular member) was met by the valve seat. Moreover, the jury had determined that Abbott failed to prove harm suffered as a result of Braun's alleged patent misuse. Accordingly, we conclude that the district court did not abuse its discretion in denying attorney fees.

## VIII

In conclusion, claim 1 requires a traverse cross bar or its equivalent. Based on this claim interpretation, substantial evidence supports the jury's verdict of no infringement. There is inadequate support for the judgment that Braun should be equitably estopped from suing Abbott or NP Medical for infringement. Moreover, the district court erred by instructing the jury that it must find patent misuse if Braun placed any post-sale restrictions on use of the SafSite® valves it sold to Abbott. This issue instead should have been analyzed under the framework established in *Mallinckrodt,* and we remand for that purpose. Finally, the district court did not abuse its discretion in

denying Abbott a new trial on damages resulting from Braun's allegedly anticompetitive actions or in denying Abbott attorney fees. Accordingly, the judgment of the district court is affirmed-in-part, reversed-in-part, vacated-in-part and remanded.

No costs.

*AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART and RE-MANDED.*