**MEDICAL DEVICE TECHNOLOGIES, INC., Plaintiff–Appellant,**

v.

**C.R. BARD, INC., Defendant–Appellee.**

No. 00–1378.

United States Court of Appeals, Federal Circuit.

March 27, 2001.

Rehearing Denied April 20, 2001.

Before CLEVENGER, SCHALL, and DYK, Circuit Judges.

CLEVENGER, Circuit Judge.

The United States District Court for the Northern District of Illinois determined on summary judgment that Medical Device Technologies' ("MD Tech's") U.S. Patent No. 5,092,870 ("the '870 patent") was not infringed by the spacer clip manufactured and sold by C.R. Bard ("Bard"). *Medical Device Technologies, Inc. v. C.R. Bard, Inc.,* No. 98–C–4574 (N.D.Ill. Apr. 11, 2000) (*"SJ Hearing Transcript"*). Because we conclude that there is a material factual dispute over whether the spacer clip manufactured by Bard (hereinafter, "the Bard device") infringes the '870 patent, we *vacate* and *remand.*

I

The '870 patent is directed towards a spacer clip designed to hold a biopsy needle in a fixed position. A biopsy needle is a specialized apparatus with two basic parts: an inner needle which has a hollowed-out portion for holding a tissue sample, and a hollow outer needle which slides over the inner needle. The outer needle

has a cutting edge, while the inner needle has a pointed tip.

During use, the biopsy needle is inserted into a patient with the cutting edge of the outer needle positioned over the inner needle. The inner needle is then pushed forward, and the pointed tip of the inner needle cuts through the tissue until the hollowed-out portion of the inner needle is adjacent to the desired tissue sample. The outer needle is then pushed forward over the inner needle, simultaneously severing the tissue and capturing it in the hollow tissue sampling portion of the inner needle. The entire biopsy needle is then withdrawn from the patient, with the outer needle maintained in position over the inner needle.

Thus, the inner and outer needles must move freely relative to one another, but also must be kept in a set relative position when inserting and removing the biopsy needle from the body tissue being sampled. The biopsy needle is often used in conjunction with a biopsy gun, which automatically controls the movements of the inner and outer needles in the tissue. However, when the needle is removed from either the tissue or the biopsy gun, the inner and outer needles' relative positions must be maintained. The '870 patent and the Bard device are both spacer clips designed to maintain this relative spacing between the biopsy needle's inner and outer needles.

In order to understand the structures at issue, illustrations of an embodiment of the '870 patent structure and the Bard spacer clip in conjunction with a biopsy needle are shown below:

**BARD SPACER CLIP AND NEEDLE**

**'870 PATENT STRUCTURE**

The '870 patent discloses a spacer clip embodiment designed to fit around the inner and outer needles of the biopsy needle. The '870 embodiment has a main body 41, to which two splines, 33 and 34, are joined by connecting "webs" 35, 36, 37 and 39. The splines are flexible and have hook members (or handles) 52, 53, 54 and 55 on each end. To operate the spacer clip, the user presses in on the middle of the flexible splines at approximately points 50 and 51. This causes the splines to bow outwards, moving the hook members outward and allowing them to be placed around, or removed from, the plungers of the inner and outer needles of the biopsy

needle. When the hook members engage the plungers, the inner and outer needles are maintained at a uniform separation

The Bard device is designed to fit on the side of the biopsy needle apparatus. The Bard device has a main body section I attached by joining webs to rigid tab members C and D. When points 114 on the tabs C and D are pressed inwardly, the joining webs flex to allow the tabs to rotate away from the biopsy needle handles.

## II

Only claim 1 of the '870 patent is at issue in this litigation. The parties do not dispute that the preamble of claim 1 applies to the Bard device. Claim 1 contains three limitations:

1. A spacer clip apparatus, for use with a biopsy needle ... the spacer clip apparatus comprising:

*support body means;*

*handle receipt means* positioned along said support body means for engaging the first and second handles of said first inner and second outer needles, respectively, to maintain the first and second handles of the first inner and second outer needles in said second of said configurations positioning the hollow shaft of the second outer needle immediately about the tissue holding region of said first inner needle so as to surround and enclose same to retain tissue being sampled therewithin said tissue holding region, through positioning of said first handle of the first inner needle and the second handle of the second outer needle in said predetermined, axially spaced relationship, as dictated by the location of said handle receipt means along the support body means; and

*handle disengagement means* operably connected to said support means and said handle receipt means for substantially simultaneously disengaging, in a facilitated manner said first and second handles of said first inner and second outer needles respectively.

'870 patent, col. 8, line 11–col. 9, line 9 (emphasis added).

Thus the three limitations at issue are: 1) support body means, 2) handle receipt means, and 3) handle disengagement means. The district court construed the claim limitations in a *Markman* hearing. *Medical Device Technologies, Inc. v. C.R. Bard, Inc.,* No. 98–C–4574 (N.D.Ill. Apr. 16, 1999) (*"Markman order"*). In the *Markman order,* the district court looked for structure disclosed in the '870 specification corresponding to each of the "means" limitations, indicating that the court construed all three limitations as means-plus-function limitations pursuant to 35 U.S.C. § 112, ¶ 6.

 This court reviews claim construction *de novo. Markman v. Westview Instruments Inc.,* 52 F.3d 967, 34 USPQ2d 1321 (Fed.Cir.1995). In determining whether or not a claim limitation is a means-plus-function limitation, "use of the word 'means' creates a presumption that § 112, ¶ 6 applies." *Personalized Media Communications, L.L.C. v. ITC,* 161 F.3d 696, 703, 48 USPQ2d 1880, 1886 (Fed.Cir. 1998). However, if the limitation uses the word "means" but does not recite a function that corresponds to the means, then § 112, ¶ 6 is not invoked. *See Rodime PLC v. Seagate Tech., Inc.,* 174 F.3d 1294, 1302, 50 USPQ2d 1429, 1434 (Fed.Cir. 1999). Additionally, even if the limitation does recite a function, if sufficient structure for performing the function is also recited, then § 112, ¶ 6 does not apply. *See Sage Prods. v. Devon Indus., Inc.,* 126 F.3d 1420, 1427–28, 44 USPQ2d 1103, 1109 (Fed.Cir.1997).

 As an initial matter, we agree with the parties that both the handle receipt means and the handle disengagement

means limitations should be construed as means-plus-function type limitations pursuant to 35 U.S.C. § 112, ¶ 6. However, the parties dispute whether or not the "support body means" limitation also invokes a means-plus-function § 112, ¶ 6 analysis.

The "support body means" limitation stands alone and does not recite any associated structure. The limitation also does not recite much functional detail. However, the term "support" itself connotes function. Because the "support body means" limitation uses the phrase "means" and also recites function, without reciting any definite structure, it is appropriate to construe the term as a means-plus-function limitation.

As no other claim construction issues have been raised by the parties, we proceed to analyze the summary judgment ruling of noninfringement.

### III

The district court granted summary judgment based upon a finding that the Bard device did not infringe the "handle disengagement means" limitation of the claim. The district court indicated that no issue of fact existed as to this issue. *SJ Hearing Transcript* at 55. We disagree.

"In determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the nonmoving party and resolves all doubts in its favor." *Eli Lilly & Co. v. Barr Labs., Inc.*, 222 F.3d 973, 980, 55 USPQ2d 1609, 1614 (Fed.Cir.2000). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Thus, summary judgment may be granted when no 'reasonable jury could return a verdict for the nonmoving party.'" *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1580, 42 USPQ2d 1777, 1779 (Fed.Cir.1997) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986)). "Although equivalence is a factual matter normally reserved for a factfinder, the trial court should grant summary judgment in any case where no reasonable factfinder could find equivalence." *Sage Prods.*, 126 F.3d at 1423, 44 USPQ2d at 1106. We review a grant of summary judgment *de novo*. *Eli Lilly*, 222 F.3d at 980, 55 USPQ2d at 1613.

The district court's *Markman order* construed the "handle disengagement means" limitation as a means-plus-function limitation, and identified both the claimed function and the corresponding structure in the written description of the '870 patent for performing that structure:

> The function of the "handle disengagement means" is to substantially simultaneously disengage, in a relatively easy manner, the first and second handles of the first inner and second outer needles respectively. Thus, the "handle disengagement means" serve to separate the spacer clip from the needle by releasing the handle receipt means or hook members 52–55 from engagement with the first and second handles of the inner and outer needle. The structure for carrying out this function is shown in Figures 3, 6, 7 and 10 and Col. 4, lines 1–13 and lines 25–38, and Col. 7, lines 30–37 and equivalents thereof. *The structure includes at least one spline (33 or 34) fabricated of a resistively flexible material and either webs 36–37 or webs 38–39 and equivalents thereof.*

*Markman order* at 2 (emphasis added).

"Literal infringement of a § 112, ¶ 6 limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification." *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267, 51 USPQ2d 1225, 1229 (Fed.Cir.1999). In granting summary

judgment of noninfringement, the district judge stated:

> [T]he Bard structure that is pressed to disengage the handles of the needle is not a spline. It is not long. It is not narrow. More importantly, it is not a flexible spline. It does not bend. Rather, the web structure to which it is attached bends, and in this way the disengagement takes place.
>
> . . .
>
> *I do not regard the Bard rigid members and webs as the equivalents of plaintiff's spline* fabricated of a resistively flexible material. Nor do I believe that there is a genuine issue of fact as to that matter.
>
> . . .
>
> To sum up, then, I'm going to grant the defendant's motion for summary judgment of noninfringement of claim 1 of the '870 patent on the basis that *the defendant's device lacks a spline*, which is, as I have held in the Markman hearing, a required part of the structure claimed in that patent.

*SJ Hearing Transcript* at 54–56. The district court's analysis focused upon the requirement that the infringing device contain identical or equivalent structure to the handle disengaging means structure of the '870 patent. However, this analysis improperly focused upon only one portion of the handle disengaging means structure—the resistively flexible spline—whereas the court had construed the handle disengagement means as including *both* a spline and webs.

"The individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations. Rather, the claim limitation is the overall structure corresponding to the claimed function.... Further deconstruction or parsing is incorrect." *Odetics*, 185 F.3d at 1268, 51 USPQ2d at 1230. The district court's analysis placed all of the focus upon

the '870 patent's spline component. However, a proper analysis should compare the '870 patent's spline *and* webs with the Bard device's "rigid members" and webs, in order to determine if these two structures are identical or equivalent. A component-by-component analysis under § 112, ¶ 6 is not appropriate.

We find that a question of material fact exists as to whether or not the Bard device's rigid members and webs are equivalents of the '870 patent's spline and webs. Both parties presented expert declarations on the issue of infringement: Bard presented the Kurtz declaration, and MD Tech presented the Taylor declaration. The two expert declarations reach opposite conclusions as to whether the Bard device contains structure equivalent to the handle disengagement means of the '870 patent. Contrary to Bard's assertions, the Taylor declaration is not merely "conclusory," and cannot simply be disregarded.

Equivalence remains a question of material fact when specific, detailed evidence by dueling expert witnesses is submitted, and, therefore, summary judgment is inappropriate on this issue. We express no opinion regarding whether a question of material fact exists with respect to Bard's infringement of the other two means-plus-function limitations of the claim.

Bard further argued at oral argument that the "way" in which the Bard device disengages is substantially different from the way in which the device of the '870 patent disengages. Bard claims that the Bard device contains additional structure that engages the biopsy needle handles, and that this additional structure requires the Bard device to use a two-step disengagement process. We agree that at trial further attention must be brought to bear on distinguishing between the *function* of the handle disengagement means, and the *way* in which that function is achieved.

However, we also note that the Taylor declaration explicitly addresses this "two-step" disengagement argument, and suffices to raise a question of material fact regarding whether the Bard device's handle disengagement means operates in substantially the same way as the corresponding structure in the '870 patent.

The grant of summary judgment of non-infringement is vacated and remanded for further proceedings consistent with this opinion.

### COSTS

No costs.